UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
**F I L E D**

SEP 1 4 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-480-GWU

TRACEY BEGLEY,                                                     PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

## INTRODUCTION

The plaintiff originally brought Begley v. Massanari, London Civil Action No.

00-196 (E.D. Ky. June 20, 2001) to obtain judicial review of an administrative denial

of his application for Disability Insurance Benefits (DIB) and Supplemental Security

Income (SSI). After a period of reconsideration, prompted by the undersigned's

Memorandum Opinion, Order and Judgment of June 20, 2001 (Tr. 353-362), and

another remand at the request of the Commissioner in Begley v. Barnhart, London

Civil Action No. 02-535 (E.D. Ky.), the case is yet again before the Court on cross-

motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining

whether the findings of fact made are supported by substantial evidence. Jones v.

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir.

1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th

1

Begley

Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process. Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under

2

Begley

certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is also listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 CFR 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions  .  .  .  or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott

3

v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is

significant, the Commissioner may still use the rules as a framework for decision-

making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely

using the term "framework" in the text of the decision is insufficient, if a fair reading

of the record reveals that the agency relied entirely on the grid. Ibid. In such cases,

the agency may be required to consult a vocational specialist. Damron v. Secretary,

778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the

Commissioner's decision may be produced through reliance on this expert

testimony only if the hypothetical question given to the expert accurately portrays

the plaintiff's physical and mental impairments. Varley v. Secretary of Health and

Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

Mr. Begley filed applications for DIB and SSI in 1997, which were denied

administratively but remanded by this Court for further consideration of the plaintiff's

mental status. (Tr. 353-362). Meanwhile, the plaintiff had filed a second set of DIB

and SSI applications, alleging the same onset date of January 29, 1997, and these

applications were consolidated with the first set of applications on remand. (Tr.

751). An Administrative Law Judge (ALJ) again denied the applications in a

decision dated June 20, 2002, and, after the Appeals Council declined to review,

the plaintiff again brought another action against the Commissioner in this Court.

Begley

(Tr. 748-764).   However, the Commissioner then requested a remand under Sentence Four of 42 U.S.C. Section 405(g) in order to obtain a new consultative psychological evaluation by a "qualified medical source" as defined in the Commissioner's regulations. (Tr. 808-10).[1]   The Court granted the Commissioner's request in an Order and Judgment dated July 23, 2003. Begley v. Barnhart, London Civil Action No. 02-235 (E.D. Ky.) (Tr. 806-7).   The plaintiff filed another set of SSI and DIB applications, and these were also consolidated with the prior applications prior to the issuance of the current ALJ's decision on May 28, 2004.  (Tr. 751-64).

The ALJ found that the plaintiff had "severe" impairments consisting of degenerative disc disease, status post lumbar spine surgery, a history of L5-S1 disc herniation with residual signs of S1 radiculopathy, an adjustment disorder with depressed mood, and borderline intellectual functioning. (Tr. 758).  Nevertheless, based, in part, on the testimony of a vocational expert (VE), the ALJ determined that Mr. Begley had retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to to benefits.  (Tr. 761-4).  The Appeals Council declined to review, and this action followed.

---

[1]Psychological evaluations by Dr. John Gatschenberger had been obtained, but the Commissioner concedes that his license to practice psychology had lapsed at the time. Memorandum in Support of the Commissioner's Decision, Docket Entry No. 6, p. 10.

At the most recent administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs assuming that he was limited to sedentary level exertion, and also had the following non-exertional restrictions. (Tr. 1467). He: (1) could stand and walk for two hours in an eight-hour day, and could sit for eight hours; (2) could not climb ladders, ropes, or scaffolds; (3) could rarely crouch, crawl, kneel, or stoop; (4) could occasionally reach overhead; (5) could have no direct contact with vibrating machinery; and (6) retained the ability to sustain attention and concentration sufficient to perform simple, repetitive tasks in a relatively low stress and object focused work environment with no extensive social interaction with co-workers and supervisors. (Tr. 1467-8). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 1468).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Begley's treating neurosurgeon, Dr. William A. Brooks, initially treated him in April, 1996 for a complaint of a lower back pain radiating to the left leg. (Tr. 127). A myelogram in January, 1997 showed a herniated disc at the L5-S1 level, and Dr. Brooks performed surgery in April, 1997. (Tr. 129, 134-5). Dr. Brooks

6

prescribed work hardening, but suggested the possibility of looking for employment "outside the mining industry." (Tr. 188). On July 31, 1997, Dr. Brooks noted that the work hardening program had been "a little too strenuous," concluded that the patient was at maximum medical improvement (MMI) with a 15 to 18 percent impairment, and that his work restrictions would be delineated by a functional capacity evaluation (FCE) yet to be obtained. (Tr. 226, 490). *This was all the evidence from Dr. Brooks that was before the Court at the time of its June 20, 2001 Memorandum Opinion. (Tr. 378-84).*

Subsequently, an FCE was performed by a physical therapist in October, 1997, and appears to indicate that the plaintiff could perform at least medium level exertion, although Mr. Begley insisted to the examiner that he could only perform at this exertional level by taking his pain medication, Lortab. (Tr. 501).

Mr. Begley received further treatment from Dr. Brooks as well as other sources for continued complaints of back and leg pain. On May 24, 2001, Dr. Brooks noted that the plaintiff complained of persistent pain since 1997, and more recently "hyperesthesia" in the leg. (Tr. 693). An MRI performed in 2000 showed degenerative changes at L5-S1 with post-operative changes, and no evidence of a recurrent herniation. (Id.). Dr. Brooks' examination showed a restriction in range of motion, and a decreased left Achilles reflex as compared to the right. (Id.). He ordered an additional lumbosacral spine MRI, and referred his patient to a

7

Begley

colleague, Dr. Brett Scott, also a neurosurgeon, for an additional opinion. (Id.). Dr. Scott examined Mr. Begley on July 21, 2001, and noted that he favored his left leg when walking, and had some low back pain, but his leg pain was much worse. (Tr. 698). He interpreted the new MRI as showing some scar tissue, but also significant soft tissue and lateral recess stenosis at L5-S1 on the left. (Id.). There was also desiccation and narrowing. Dr. Scott stated that he believed Mr. Begley had significant lateral recess stenosis and might have a recurrent disc herniation, and recommended surgery. (Id.). Dr. Brooks did perform surgery in September, 2001, and gave a post-operative diagnosis of lateral recess syndrome at L5-S1, left. (Tr. 703). On December 6, 2001, Dr. Brooks determined that the plaintiff was again at MMI, and that he had a "permanent impairment which, in my opinion, precludes him from occupational opportunities." (Tr. 705). Dr. Brooks also submitted a residual functional capacity assessment dated January 19, 2002 indicating that the plaintiff could lift less than 10 pounds, could stand and walk less than two hours in an eight-hour day, could sit less than two hours in an eight-hour day, would have to have the ability to sit or stand at will, would need to lie down at unpredictable intervals during the work shift, could never twist, stoop, crouch, or climb ladders, could occasionally climb stairs, and would have restrictions on pushing and pulling, and on concentrated exposure to extreme cold and wetness. (Tr. 722-4). Finally, in an unsigned note dated March 7, 2002, but which clearly refers to Dr. Brooks in the first

8

person in giving the patient's history, it was noted that Mr. Begley's flexion, extension, lateral rotation, and lateral bending were all about 20 percent of normal, and his left Achilles reflex was diminished, as was sensation on the lateral aspect of the foot. (Tr. 727). The physician wrote that his restrictions "have been delineated previously by a functional capacity evaluation subsequent to his initial operation." (Tr. 728).[2] It was concluded that his limitations "at this time include avoidance of repetitive bending, stooping, climbing, crawling, squatting, and balancing," and that he could lift only "negligible weight," and needed to avoid prolonged sitting, standing, and walking. (Id.). He was incapable of working an eight-hour day. (Id.).

The ALJ in the present, 2004 decision followed the ALJ in the 2002 decision in describing Dr. Brooks' January, 2002 functional capacity assessment as being the work of Dr. Mark Adams, the plaintiff's treating family physician. (Tr. 759, 786). The exhibit, B-38 F, is listed in the Court transcript index as being from Dr. Brooks. (Tr. 4 G). Moreover, while the document does not have the most legible signature, it is consistent with Dr. Brooks' initials, W. A. B., and is almost identical to his signature on certain other documents into transcript which are undoubtedly by Dr. Brooks. (E.g. Tr. 139, 144). In view of this, the reasons given by the ALJ for failing

---

[2]Presumably, this was a reference to the September, 1997 FCE, but, in any case, the physician continued, describing Mr. Begley's limitations "at this time."

9

to credit an opinion of "Dr. Adams" are not applicable, and a remand will be required for further evaluation.

Additionally, the ALJ reasoned the plaintiff failed to follow prescribed treatment, in that he did not follow up as recommended in a July 12, 2003 office note by Dr. Scott. (Tr. 759). Dr. Scott had reviewed a new MRI scan from December 4, 2002 showing "severe narrowing and desiccation" of L5-S1, as well as desiccation at L4-5 and other levels, and his examination showed findings "consistent with an old S1 radiculopathy including absent ankle reflex on the left and hypesthesia in the S1 dermatome of the left foot." (Tr. 875). Dr. Scott did not think further surgery was an option, referred Mr. Begley to a pain specialist, and suggested a one month trial of the medication Feldene. (Tr. 875-6). Mr. Begley testified at the administrative hearing, however, that he had attempted to follow up with a pain specialist at Dr. Scott's recommendation, but that his worker's compensation carrier would not pay for treatment. (Tr. 1458). The Sixth Circuit has held that a claimant may be disabled by conditions which he simply cannot afford to remedy, and it is Commissioner's burden to determine if there is affordable treatment for the plaintiff before determining that he is not disabled. McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990). Since no such inquiry or finding was made, this line of reasoning is not persuasive in discounting the treating physician opinion.

10

## CONCLUSION

The Court notes in passing that the ALJ in 2004 suggested that it was not necessary to revisit or reassess the claimant's allegations and limitations based on physical impairments prior to the June 20, 2002 ALJ decision, because this Court's remand in 2003 was for further consideration of the claimant's alleged mental impairments, and no disagreement was expressed with the findings regarding physical limitations. (Tr. 753-4). As previously noted, the 2003 remand was *at the request of the Commissioner* under Sentence Four of 42 U.S.C. Section 405(g), and did not in any way represent a final decision or a finding by the Court that any part of the administrative decision was supported by substantial evidence.

Nor can the Court ignore newly-introduced evidence. This medical evidence establishes a deterioration of the plaintiff's condition in 2001. Treating Physician Brooks noted the recent development of hyperesthesia in the leg in May, 2001 (Tr. 693) and Neurosurgeon Scott interpreted a new MRI as showing stenosis and a possible herniated disc (Tr. 698). The plaintiff underwent his second back surgery that year, and his treating neurosurgeon thereafter issued not only a permanent disability opinion (Tr. 705) but also issued at least one, if not two, assessments restricting the plaintiff to less than full sedentary work (Tr. 722, 728). The non-exertional restrictions cited by the doctor in either evaluation were essentially disabling—e.g., the need to lie down at unpredictable intervals during the work shift,

11

sitting two hours in an eight hour day while simultaneously being restricted to lifting *less than* ten pounds, or only lifting "negligible" weight and being incapable of working an eight hour day.

Neither of the aforesaid opinions were properly rebutted. The first opinion was erroneously attributed to another physician. The second opinion was not addressed by any agency medical reviewer and the only examiner of record to express a contrary opinion was a one-time examiner who reviewed no medical records or objective studies.[3]      The examiner had noted that the plaintiff walked with a cane in one hand and had a profound limp, was uncomfortable in the sitting and supine positions, and refused to perform most range of motion maneuvers involving the lumbar spine (Tr. 715); thus, the examiner's assessment of functional capacity does not appear to have been based on a full examination.

Given these facts and the fact that the case has already been remanded to the agency on two occasion, the Court finds the interests of justice would be served by reaching a dispositive decision on the plaintiff's appeals. Begley has clearly established an entitlement to benefits for the period beginning May 24, 2001. As to the prior period, in view of the assessments provided by the agency medical

---

[3]The examiner specifically stated that he had been told by the plaintiff that a second back surgery had occured, but was "unclear" about what was done. (Tr. 716).

Begley

reviewers, and the fact that the plaintiff's back had not yet reached its final deterioration, the administrative decision will be affirmed.

The decision will be remanded for an award of benefits based on disabled status beginning in May, 2001, and will be affirmed with regard to the plaintiff's status for the prior period.[4]

This the ___14___ day of September, 2005.

G. WIX UNTHANK
SENIOR JUDGE

---

[4]The Court is unpersuaded by the plaintiff's arguments regarding his mental condition, in that the ALJ's hypothetical mental restrictions are consistent with a recent one time mental status examiner, Dr. Blaine Pinaire (Tr. 884-90), and none of the other one-time examiners cited by the plaintiff are entitled to greater weight.

13